VIRGLE J. AND MARTHA T. STEPHENS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
STEPHENS v. COMMISSIONER
Docket No. 7356-76.
United States Tax Court
T.C. Memo 1978-449; 1978 Tax Ct. Memo LEXIS 69; 37 T.C.M. (CCH) 1847-40; November 7, 1978, Filed Virgle J. Stephens and Martha T. Stephens, pro se. Juandell D. Glass, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined deficiencies in petitioners' Federal income tax of $582.04 and $1,207.01 for the taxable years ending December 31, 1971, and December 31, 1972, respectively. Due to various concessions by petitioners, the sole issue for decision is whether certain amounts received by petitioner Virgle J. Stephens in 1971 and by Martha T. Stephens in 1972 are excludable as scholarship or fellowship grants under section 117. [1]
*70 FINDINGS OF FACT This is a fully stipulated case. The stipulated facts are found accordingly. Petitioners, husband and wife, resided in Cincinnati, Ohio, at the time they filed their petition herein. They filed joint Federal income tax returns for the taxable years 1971 and 1972 with the district director of internal revenue, Cincinnati, Ohio. Petitioner Virgle J. Stephens (Virgle) received his Ph.D. from Indiana University in 1967. During the taxable years 1971 and 1972, he was employed as a professor by Bowling Green State University, Bowling Green, Ohio (Bowling Green). On April 1, 1971, Virgle and Bowling Green entered into a "Summer Faculty Contract," which provided that Virgle was to be "employed as a member of the University summer faculty" during the period June 21 to August 27, 1971, that he was to be "compensated for the period designated" in the amount of $2,167 payable in two equal installments on July 23 and August 27, and that his "employment [was to] be for 'FACULTY RESEARCH GRANT.'" [2] Petitioners concede that there was an ancillary condition that a "faculty member receiving a summer grant return to the university the following year." [3]
*71 Bowling Green included the $2,167.00 in the gross wages of Virgle for 1971 and withheld income and social security taxes thereon. Martha T. Stephens (Martha) received her Ph.D. from Indiana University in 1967. During the taxable years 1971 and 1972, she was employed as a professor at the University of Cincinnati. By virtue of a letter, dated March 4, 1971, from the Chairman, Taft Faculty Committee, Martha received a research grant in the amount of $3,500. The letter specified that "Recipients of Taft grants are under obligation to return to the University of Cincinnati for at least one year following tenure of the grant." Martha received the $3,500 during the taxable year 1972. Neither Virgle nor Martha was a candidate for any degree during 1971 or 1972. OPINION At the outset, we note that petitioners claim that the burden of proof is upon respondent. This is clearly erroneous. The burden of proof is upon the petitioners to show that they are entitled to the benefits of section 117. Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure.
The controlling principle to be applied in this case is that set *72 forth in Bingler v. Johnson,394 U.S. 741, 757-758 (1969), namely, that bargained-for payments as the quid pro quo "for services rendered -- whether past, present, or future -- should not be excluded from income as 'scholarship funds'" under section 117. See also Buhr v. Commissioner, an unreported case (7th Cir. 1973, 40 AFTR 2d 77-5441, 77-2 USTC par. 9633), affg. a Memorandum Opinion of this Court. In short, the essential requirement is that, in order to be excluded as a scholarship or fellowship, the amount in question must have no strings attached. See 394 U.S. at 751. We think the express condition requiring Virgle to return to Bowling Green the following year causes his grant to fall squarely within the proscription of Bingler v. Johnson,supra. We also think that, since Martha was subject to a similar requirement, namely, to return to the University of Cincinnati, the characterization of her grant as a scholarship or fellowship is similarly proscribed. On brief, petitioners indicate that the source of Martha's grant was the Taft Foundation, which they assert was independent of the University of Cincinnati. *73 The record is silent on the subject, but it appears that, whatever their source, the funds were administered by a faculty committee of the university and, in any event, the quid-pro-quo principle would appear to apply even if the requirement that Martha return to the university was imposed by a third-party grantor. Indeed, in many cases -- too numerous to cite -- grants have been held not to be excludable under section 117 even though a third party was the source of the funds involved. Finally, we note that neither Virgle nor Martha was a candidate for any degree during 1971 or 1972. Thus, even if petitioners were correct in their position, they would not be entitled to exclude the entire amount of their grants. Under section 117(b)(2)(B), the amount of the exclusion is limited to $300 per month, which, in Virgle's case, would be at most $600 (2 months) and, in Martha's case, would be at most $1,800. [4] See section 1.117-2(b)(2)(i), Income Tax Regs.
Decision will *74 be entered for the respondent. Footnotes
1. All section 117 references are to section 117 of the Internal Revenue Code of 1954↩, as amended and in effect during the particular years at issue.
2. Respondent makes no claim that Virgle had any teaching responsibilities during that period. ↩
3. The conditions for the 1974 program, set forth in a memorandum to university faculty members from the chairman of the Faculty Research Committee, dated September 1973 and attached to the stipulation of facts, specify that such an agreement to return is required, and the above-quoted language from petitioners' brief clearly indicates that petitioners do not dispute the applicability of such condition to 1971.↩
4. The record is unclear as to the period for which Martha's grant was awarded, although there is an unexplained handwritten notation on the March 4, 1971, letter that states "For 1972 - January to June."↩